UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TRASHAWN HUGHES                                    CIVIL ACTION

VERSUS                                             NO: 24-103

BOUCHON PROPERTIES LLC, ET AL.                     SECTION: "A" (5)

**ORDER AND REASONS**

The following motions are before the Court: **Motion for Summary Judgment (R. Doc. 53)** filed by the defendants, Bouchon Properties LLC, and Lester Bouchon, and a **Motion for Partial Summary Judgment (R. Doc. 56)** filed by the plaintiff, Trashawn Hughes. Both motions are opposed. The motions are before the Court on the briefs without oral argument.[1] For the following reasons, the Court **GRANTS** Defendants' Motion (R. Doc. 53) and **DENIES** Plaintiff's Motion (R. Doc. 56).

## I.    BACKGROUND

In late 2016, Hughes, a disabled black male, signed a lease agreement with Keener Properties LLC to rent a unit at 1602 Clearview Parkway in Metairie, Louisiana.[2] Keener subsequently sold the apartment complex to Bouchon Properties LLC, managed by Lester Bouchon, in May of 2021.[3] The parties dispute whether there was an agreement that rent would remain unchanged.[4] Still, from May 2021 until the final eviction proceeding in August 2023,

---

[1] Defendant's Motion for Summary Judgment originally had a submission date of January 21, 2026. Plaintiff tried to make his submission date for his Motion for Partial Summary Judgment on the same day. However, the Clerk's Office had to mark Plaintiff's motion deficient several times, which caused confusion as to when the proper submission date was. The Court continued the submission date to February 4, 2026. R. Doc. 59. The Parties filed a joint motion to further continue the submission date to March 4, 2026, which the Court granted. R. Doc. 63.

[2] R. Doc. 1, Complaint, ¶¶ 7-10

[3] *Id.* ¶ 11

[4] *See id*. ¶ 14; *but see* R. Doc. 53-2, Def.'s Statement of Uncontested Facts, ¶ 4.

1

Hughes had great difficulty in paying his rent in full and on time.

Hughes claims that Bouchon began personally visiting Hughes' apartment to collect rental payments and "made racial remarks [and] sexual innuendos" that made Hughes uncomfortable.[5] Hughes testified that he "overheard Mr. Bouchon make a racially derogatory statement referencing Mr. Hughes as a 'n-----' to a neighbor."[6] In one text exchange, Bouchon called Hughes "sweat heart [sic],"[7] and in another, Bouchon refused to answer Hughes' calls, saying "Don't call me. Text me. That way you won't have to call me a liar and a nx÷=÷."[8] The Court notes, however, that Bouchon testified, and this message indicates that Hughes is the one who normally uses racial slurs in their communications, not Bouchon.[9]

In November 2022, Bouchon tried to evict Hughes for the first time. However, this proceeding was dismissed after the court found Bouchon had habitually accepted late payments from Hughes, a fact which Bouchon does not deny.[10] In July of 2023, Bouchon notified Hughes that on August 1, 2023, he would owe the following rental payments: $131.00 for April of 2023, and $950.00 for each of May, June, July, and August of 2023.[11] He informed Hughes that this rent—totaling $3,931.00—would be due on August 15, 2023.[12] Hughes still maintains that he never agreed to a monthly rent of $950.[13]

On August 16, 2023, Bouchon began another eviction proceeding after Hughes failed to pay the rent owed between April and August. The court entered judgment against Hughes at a

---

[5] R. Doc. 1 ¶¶ 17, 38; *see also* R. Doc. 56-2 at 16.
[6] *Id.* at 17.
[7] R. Doc. 56-2 at 148.
[8] R. Doc. 53-6 at 205.
[9] R. Doc. 53-4 at 173.
[10] R. Doc. 56-2 at 15.
[11] R. Doc. 1 ¶ 29.
[12] *Id.*
[13] *Id.* ¶ 30.

hearing on a rule for possession on September 5, 2023.[14] While Bouchon did move for a trial *de novo*, the parties ultimately entered into a consent judgment, and Hughes vacated the Apartment in October 2023.[15] Hughes contends that Bouchon intentionally sought to "exclude, evict, and displace" him on the basis of race, color, and/or disability.[16]

The Court previously dismissed Hughes' claims of discriminatory advertising and disability discrimination.[17] R. Doc. 16. Accordingly, the only causes of action remaining are claims of racial discrimination under 42 U.S.C. § 1982 and the Fair Housing Act ("FHA"), and various state-law claims.[18] As explained in the Court's previous order, Hughes' claims can survive only if he can demonstrate that race was a relevant factor in his dealings with Bouchon and if can plausibly allege that his eviction was a result of racial animus. *See* R. Doc. 16.

## II.    LEGAL STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing Anderson, 477 U.S. at 255). Once the moving party has initially

---

[14] R. Doc. 56-2 at 311.

[15] R. Doc. 53-6 at 32.

[16] R. Doc. 1 ¶ 39

[17] The Court allowed Hughes to move for leave to amend his complaint within fifteen days of entry of its order for the purpose of curing the defects in the complaint as to his claims for Disability Discrimination Under 42 U.S.C. § 3604(f)(1) and Discriminatory Advertising Under 42 U.S.C. § 3604(c), but he did not move to amend. *See* R. Doc. 16.

shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

## III.   DISCUSSION

The majority of Hughes' arguments attack the eviction judgment and consent judgment in various ways.[19] He only devotes one singular page to discussing the alleged discrimination.[20] As an initial matter, the Court agrees with Defendants that the Rooker-Feldman doctrine bars the Court from hearing any collateral attacks on the state-court eviction proceeding. *See Kemp v.*

---

[19] The conclusion section of Hughes' motion states:

> For these reasons, Plaintiff respectfully requests that the Court grant summary judgment in favor of Mr. Hughes, **declare that Defendants' eviction was unlawful and improperly prosecuted**, and award all relief appropriate under Louisiana law, **including vacatur of the eviction judgment**, damages, and costs, together with any further relief the Court deems just and proper.

R. Doc. 56-1 at 24 (emphasis added).

[20] See R. Doc. 57.

*Powers,* CV No. 25-30024, 2025 WL 1898365, at *3 (5th Cir. July 9, 2025), *cert. denied*, 25-6333, 2026 WL 490531 (Feb. 23, 2026) ("Under the Rooker-Feldman doctrine, federal district courts lack subject matter jurisdiction over collateral attacks on state court judgments") (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)). The Fifth Circuit has held that "a state court judgment is attacked for purposes of Rooker-Feldman when the federal claims are 'inextricably intertwined' with a challenged state court judgment or where the losing party in a state court action seeks what in substance would be appellate review of the state judgment." *Weaver v. Texas Cap. Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (citation modified). And courts have applied the Rooker-Feldman doctrine to eviction proceedings. *See Wells v. Ali*, 304 Fed. Appx. 292, 294 (5th Cir. 2008) (affirming dismissal under the Rooker-Feldman doctrine for a lawsuit seeking to relitigate eviction-related claims in federal court). Accordingly, the Court lacks jurisdiction to hear any attack on the validity of the underlying eviction and state court proceedings.

However, the Court does have jurisdiction over Hughes' claims for racial discrimination under 42 U.S.C. § 1982 and the FHA. Further, these claims are not barred by res judicata. To raise "claim preclusion" or pure res judicata four conditions must be met: "(1) the parties in a later action must be identical to, or at least be in privity with, the parties in a prior action; (2) the judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits." *Abrams v. Morial*, 968 F.Supp. 1106, 1109 (E.D. La. 1997) (quoting *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994)). Although a consent judgment, also known as a consent decree, is freely negotiated by the parties and has the full effect of res judicata, the parties did not contemplate any issues of racial animus in their

5

agreement.[21] *See Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 858 (5th Cir. 2000) ("A consent judgment must be founded on the legal and factual issues raised in the pleadings"). This matter involves claims for a violation of Hughes' constitutional rights based on discriminatory intent. The prior state court actions, including the consent judgment, did not implicate such claims. Thus, the fourth requirement for claim preclusion is not met. *See Abrams*, 10 F.3d. at 1110. As such, the Court turns to the remaining constitutional claims.

Defendants assert that Hughes was evicted solely because of his failure to pay rent for at least four months.[22] In its previous Order, the Court laid out the standard to pursue claims under § 1982 and the FHA, and it explained that race must have motivated the eviction. *See* R. Doc. 16; *see also Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 910 (5th Cir. 2019) ("With discriminatory treatment claims, there can be no liability without a finding that the protected trait (e.g., race) motivated the challenged action"). The Court previously did not dismiss

---

[21] The consent decree states:

> IT IS ORDERED, ADJUDGED, AND DECREED that the parties mutually agree that [t]his judgment is by consent of the parties and no findings of fact against or for either party have been made.
> IT IS ORDERED, ADJUDGED, AND DECREED that Defendant will move out of his unit at 1602 Clearview Pkwy, Apt. C, Metairie, LA 70001, by Wednesday, October 3, 2023.
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant will leave all the appliances in the property and return it in a clean and habitable condition.
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that if Defendant complies with this consent judgment, this court will vacate the lower court's *Judgment of Eviction* and dismiss the Plaintiff's *Rule for Possession*. If he fails to comply with this Consent Judgment, an eviction judgment is executory the next day.
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that upon this Court vacating the *Judgment of Eviction* of the lower Court or *Judgment of Eviction* becoming executory, the 800 Bond Defendant, Trashawn Hughes[,] paid to this Court will be released without objection to Plaintiff, Lester Bouchon Jr.

R. Doc. 53-2 at 3.

[22] R. Doc. 65, Def.'s Reply, at 4.

Hughes' claims because his complaint demonstrated that race was a relevant factor in his dealings with Bouchon and plausibly alleged that his eviction was a result of racial animus. R. Doc. 16. However, Defendants have now shown that there is an absence of evidence to support Hughes' claims of racial discrimination.

A plaintiff may prove disparate treatment by direct evidence or circumstantial evidence. Whether a plaintiff presents direct or circumstantial evidence of discrimination determines the framework in which the court must analyze the claim. *Treece v. Perrier Condo. Owners Ass'n, Inc.*, 593 F.Supp.3d 422, 435 (E.D. La. 2022). Here, there is no direct evidence of discrimination, so the Court evaluates Hughes' claims under the burden-shifting evidentiary standard established for discrimination cases based on circumstantial evidence. *Inclusive Cmtys.*, 920 F.3d at 910. Since Defendants have offered a legitimate, non-discriminatory reason for Hughes' eviction (i.e., his failure to pay rent for four months), the burden shifts back to Hughes to rebut the reason offered. *See id.* at 910-11.

The evidence that Hughes offers is legally insufficient to support a reasonable inference of intentional race discrimination. He argues that the record contains direct evidence of racial animus because "Mr. Bouchon admitted that he has used the racial slur commonly referred to as the '*N-word*.'" R. Doc. 57 at 24. However, Hughes does not contend that Bouchon aimed this derogatory language at him; rather, Bouchon merely testified that he had used the word at some point in his life. Further, the record reflects that the text message Hughes mentions in his complaint, referring to a redacted version of a racial epithet, was actually a message sent by Bouchon who asked *Hughes* not to use racial slurs in their conversations.[23] Hughes points to "irregular and shifting rent

---

[23] R. Doc. 53-6 at 205. When questioned about whether his text message to the plaintiff might have been construed as racist, Mr. Bouchon responded: "Only if you understand that he was the one that called me racial slurs. I did not call him [anything]. I did not disrespect him in any way." R. Doc. 53-1 at 5.

requirements." But he does not explain how this applies to his race.[24] In his testimony, Bouchon explains that he picked up Hughes' rent in person because on two separate occasions the rent payments were lost in the mail. There was also no set date or time for rent pickup because Hughes was frequently late on rent and/or needed to pay in multiple installments.[25] After reviewing the record, the Court finds that Hughes has failed to produce any evidence that his race was a significant factor in his eviction, or that racial animus motivated Bouchon's actions. Thus, all remaining federal civil rights claims under §1982 and the FHA are dismissed. Having established that Defendants are entitled to summary judgment on the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c); *see Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004).

Accordingly;

**IT IS ORDERED** that Plaintiff's **Motion for Partial Summary Judgment (R. Doc. 56)** is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's **Motion for Summary Judgment (R. Doc. 53)** is **GRANTED** as to all federal claims. All federal claims asserted in this action are **DISMISSED WITH PREJUDICE**. Further, the court declines to exercise supplemental jurisdiction over any state law claims Hughes may have. Those claims are **DISMISSED WITHOUT PREJUDICE.**

April 21, 2026

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[24] R. Doc. 57 at 24.
[25] R. Doc. 57-2 at 52.

8